UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE#5, <br>     Plaintiff, | : <br> : <br> : | CIVIL ACTION No: 3:21-cv-517 |
| v. | : <br> : | |
| THE LEGION OF CHRIST INCORPORATED and IMMACULATE CONCEPTION APOSTOLIC SCHOOL, <br>     Defendants | : <br> : <br> : <br> : <br> : | |

## COMPLAINT

Plaintiff, John Doe#5, by and through his undersigned counsel, hereby files this Complaint against Defendants, The Legion of Christ Incorporated and Immaculate Conception Apostolic School, and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, John Doe#5, is an adult male who is a citizen and resident of Immokalee, Florida. Plaintiff is identified in this lawsuit by the pseudonym John Doe#5 in that this case involves facts of the utmost intimacy regarding Plaintiff's childhood sexual abuse, and Plaintiff fears further psychological injury if his name were publicly disclosed. At all material times, the Plaintiff was a student at the Immaculate Conception Apostolic School in Center Harbor, New Hampshire.

2. Defendant, The Legion of Christ Incorporated, is a Connecticut corporation with its headquarters and principal place of business located at 475 Oak Avenue in Cheshire, Connecticut. At all material times, The Legion of Christ was responsible for the assignment of priests, supervision of priests, and the implementation of policies and

1

procedures at its parishes and Catholic schools, including policies relating to the safety of children and prevention of childhood sexual abuse.

3. Defendant, Immaculate Conception Apostolic School (Hereinafter "I.C.A.S.") is a nonprofit corporation incorporated at 109 Dane Road in Center Harbor New Hampshire with its headquarters and principal place of business located in New Hampshire.

4. Defendant I.C.A.S. was owned and operated by Defendant The Legion of Christ Incorporated. Major decisions for I.C.A.S. were established from The Legion of Christ's headquarters in Connecticut.

5. Connecticut, as the headquarters for The Legion of Christ Incorporated, has the most significant relationship to the dispute and the parties. Connecticut is the state in which Defendant Legion of Christ Incorporated administers all of its subordinate programs, including the administration of the schools it owns and operates. The administration and/or supervision of I.C.A.S. by The Legion of Christ was under the direction and control of Defendant The Legion of Christ Incorporated's headquarters in Connecticut.

6. Defendants The Legion of Christ Incorporated and I.C.A.S. hereinafter are referred to collectively as "Legion of Christ."

7. Venue properly lies in this District in that Defendant, The Legion of Christ Incorporated, is headquartered in this District and made major decisions for Defendants out of its Connecticut headquarters.

8. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 in that this matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## BACKGROUND

9. In approximately 1941, Marcial Maciel founded a religious order that soon thereafter became The Legion of Christ. In approximately 1944, Fr. Maciel was ordained as a Roman Catholic Priest by his uncle, the Bishop of Cuernavaca, Mexico.

10. Beginning at least as early as the 1950's, Fr. Maciel was engaged in the sexual molestation of children, use of drugs and financial improprieties. Some of the children he victimized were children whom he recruited for The Legion of Christ and some were Fr. Maciel's biological children whom he fathered while functioning as the leader of Defendants' organization. Fr. Maciel's actions continued throughout his life until his death in approximately 2008.

11. I.C.A.S. was a private Roman Catholic boarding school for boys in grades seven through twelve. Its objective was to educate high school candidates for the clergy of the Legion. The Legion of Christ founded I.C.A.S in 1982 in Center Harbor, New Hampshire. Sexual abuse by at least three staff members occurred at I.C.A.S. between 1982 and 1995. Legion of Christ employee Francisco Cardona sexually abused students at I.C.A.S. in the 1980s. Legion of Christ employee Fernando Cutanda sexually abused students in 1984-1985 and in 1989. This abuse was known to Legion of Christ priest Fergus O'Carroll at the time, but neither parents nor students were notified. The Legion of Christ permitted Cutanda to be ordained a priest in 1993 despite knowledge of his crimes. Legion of Christ employee Oscar Turrion sexually abused a student in 1992 or 1993. Legion of Christ priest Eduardo de la Torre was aware of this abuse at the time. Turrion was nevertheless permitted to return to I.C.A.S. to help with a "Summer Program"

for prospective students in 1995, when the Plaintiff joined the school. The Legion of Christ likewise permitted Turrion to be ordained a priest in 2000. Turrion left the priesthood in 2017 after acknowledging fathering two children while a priest.

## **SEXUAL ABUSE OF JOHN DOE#5**

12. The Plaintiff began his education at I.C.A.S. during the summer of 1995, shorting before attaining 12 years of age.

13. As the Plaintiff had joined I.C.A.S. with a close family friend, the administration of the school, through the principle of "universal charity" designed to separate close friends lest they form cliques, placed the Plaintiff in Section A with older 9th graders and his friend was placed appropriately in Section B with the 7th and 8th graders. At this time, the Plaintiff was prepubescent and much smaller than the 9th graders.

14. The decision to place the Plaintiff with older 9th graders was in direct contravention of global Legion norms governing the apostolic schools dictating that students should be in the same section as their peers. These norms were developed precisely to avoid sexual, physical or emotion abuse by older students against younger students.

15. During the Plaintiff's second year at I.C.A.S. (1996-1997), Fr. David Steffy (hereinafter "Fr. David"), was the rector.

16. During the Plaintiff's time at I.C.A.S., Fr. David displayed favoritism toward certain students, including one Luke Hueckel (hereinafter "Hueckel") who was a "team captain" (a form of delegated authority). This favoritism would be in the form of eating special meals with Fr. David, watching movies or sporting events off limits to other

4

students, and traveling with Fr. David in his minivan instead of with the other students on the school bus.

17. Hueckel was in the 9th grade, post-pubescent and much larger and more physically developed than the Plaintiff.

18. In approximately January/February of 1997, after a school outing, Fr. David instructed Luke Hueckel and the Plaintiff to shower alone and unsupervised in the student dormitory prior to the return of the rest of the students. During this time, as Hueckel showered and the Plaintiff waited for his turn, Hueckel exposed his erect penis to the Plaintiff, washing it slowly while looking at the Plaintiff. The Plaintiff, who had not previously had sexual education, was mortified and ashamed.

19. Shortly after this incident, during a quarterly change in bed assignments, the Plaintiff was assigned to sleep on the bottom bunk, under the upper bunk of Hueckel.

20. On the first night of the new sleeping arrangement, Hueckel approached the Plaintiff's bed and intentionally exposed his erection through his pajama pants to the Plaintiff.

21. That night, the Plaintiff gathered his belongings, walked to the opposite side of the dorm, and switched beds with another student. The Plaintiff was never questioned by Fr. David nor any agents, servants or employees of the Defendants about his change in bed, despite a strictly requirement by the Defendants that students sleep only in their assigned beds.

22. On approximately ten occasions over the next several months, the Plaintiff would wake up in the night to find Hueckel kneeling next to his bed with Hueckel's hands fondling the Plaintiff's buttocks or genitals.

23. During this time frame, Hueckel would attempt to intimidate the Plaintiff through bullying activities.

24. When Hueckel's activities were noticed and questioned by another student, the Plaintiff confronted Hueckel about his activities, but he denied them. It was shortly thereafter that Hueckel left the school.

25. The above sexual abuse committed upon the Plaintiff as a minor was without the Plaintiff's consent, was against his will and offensive to him.

## COUNT I - NEGLIGENCE
## (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. The Plaintiff readopts and realleges all of the allegations set forth in Paragraphs 1 through 26 as though fully set forth herein.

27. Defendant the Legion of Christ was in a special relationship with the Plaintiff of school-student, such that it owed a duty to protect the Plaintiff from foreseeable harms on school grounds and during school-related activities. In this regard, Defendant was *in loco parentis* with the Defendant's students, including the Plaintiff, which imputed on Defendant a duty to use reasonable care to protect the safety, care, well-being, and health of the minor Plaintiff while he was in their care and custody.

28. Defendant's duties encompassed using reasonable care in the retention, assignment and/or supervision of priests and supervising Legionary who would not pose a threat to the safety, care, health, and well-being of minors.

29. Defendant was in a special relationship with Fr. David of employer and employee/agent such that it had a duty to take steps to make sure that Fr. David was safe before giving him access to students.

30. At all relevant times. Defendant knew or in the exercise of reasonable care should have known that Fr. David was unfit to work with minors; negligent; and a threat to the health, safety, and welfare of the Plaintiff.

31. Despite knowledge of Fr. David's serious threat to the health, safety, and welfare of minors, Defendant continued to provide Fr. David with unfettered access to minors, including the Plaintiff.

32. Defendant had a duty to adequately train teachers and staff in protecting children from sexual misconduct of other students.

33. Defendant breached its duties to protect the Plaintiff by allowing Fr. David to serve as a staff member, giving him responsibility for the wellbeing of male students, and by failing to institute any supervision of Fr. David's exercise of authority and duty of care toward male students.

34. Defendant breached its duties to the Plaintiff by failing to protect the minor Plaintiff from sexual assault, harassment, and lewd and lascivious acts committed upon the Plaintiff by other students while he was present on school grounds, during school hours, and/or during school-related activities.

35. Defendant breached these duties by failing to use reasonable care to provide a safe environment for the Plaintiff where he would be free from the unwanted sexual advances and dangerous propensities of other students.

36. Defendant breached its duties to protect students from sexual abuse from other students in that it:

    a. failed to adequately monitor and supervise students in their interaction with other minor students, many of whom were especially vulnerable, in order to prevent injury to them;

    b. failed to educate children sufficiently about the differences between a "good touch" and a "bad touch" and the necessity of maintaining safe

boundaries amongst the resident students;

c. knew or should have known in the exercise of reasonable care that students were abusing, sexually exploiting and sexually assaulting other students and allowed such conduct to continue;

d. failed to enact guidelines to protect children from sexual abuse;

e. failed to properly train employees at I.C.A.S. about protecting children from sexual abuse;

f. failed to develop and implement a program or policy to protect children at I.C.A.S. from the harm associated with pedophiles, such as by developing informational handouts and conducting educational events addressing the issue of improper sexual conduct;

g. failed to provide adequate sexual education to students at I.C.A.S. including teaching and disseminating policies and procedures for student reporting of inappropriate sexual conduct towards students; and/or

h. failed to implement a policy of discipline in order to deter children from abusing one another.

37. Defendant breached its duties by failing to take corrective action or adequately investigate reports or allegations of sexual misconduct by other students.

38. Given Defendant's constructive and actual knowledge of the activities of the minor students and the dangerous propensities of Fr. David, the sexual assault of the Plaintiff was reasonably foreseeable to Defendant.

39. As a direct and proximate result of Defendant's breach of its duties the Plaintiff was sexually abused by another student while attending I.C.A.S.

40. As a direct and proximate result of the negligence of the Defendant, the Plaintiff suffered and continues to suffer injuries of a serious nature including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and costs associated with medical/psychological care and treatment. These injuries and damages

are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

## COUNT II- RECKLESSNESS
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. Paragraphs 1 through 40 of the First Count are hereby incorporated as Paragraphs 1 through 40 of this Second Count, as if fully set forth herein.

41. Defendant The Legion of Christ, acting through its administrators, agents, and employees, was consciously aware of the fact that it created a substantial risk of injury to the Plaintiff.

42. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant failed to take necessary and appropriate steps to reduce or eliminate the risk.

43. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant took affirmative steps to exacerbate the risk and to make harm and injury to the Plaintiff more likely, including, but not limited to, permitting Fr. David to engage in favoritism and lack of supervisory actions, and allowing the unsupervised students with known dangerous propensities access to other students.

44. The injuries suffered by the Plaintiff were caused by the reckless or callous indifference, or the wanton misconduct, of the Defendant.

## COUNT III- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. Paragraphs 1 through 40 of the First Count are hereby incorporated as Paragraphs 1 through 40 of this Third Count, as if fully set forth herein.

41.     The Defendant created an unreasonable risk of causing the Plaintiff emotional distress.

42.     The Plaintiff's distress was foreseeable.

43.     The emotional distress was severe enough that it might result in illness or bodily harm.

44.     The Defendant's conduct was the cause of the Plaintiff's distress.

### COUNT IV- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1.      Paragraphs 1 through 40 of the First Count are hereby incorporated as Paragraphs 1 through 40 of this Fourth Count, as if fully set forth herein.

41.     The Defendant intended to inflict emotional distress or it knew that emotional distress was the likely result of its conduct.

42.     The Defendant's conduct was extreme and outrageous.

43.     The Defendant's conduct was the cause of the Plaintiff's distress.

44.     The emotional distress sustained by the Plaintiff was severe.

### COUNT V- BREACH OF FIDUCIARY DUTY
### (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1.      Paragraphs 1 through 40 of the First Count are hereby incorporated as Paragraphs 1 through 40 of this Fifth Count, as if fully set forth herein.

41.     The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a fiduciary duty to the Plaintiff.

42.     This fiduciary duty gave rise to (a) a duty of loyalty on the part of the Defendant to the Plaintiff; (b) an obligation on the part of the Defendant to act in the best

interests of the Plaintiff; and (c) an obligation on the part of the Defendant to act in good faith in any manner relating to the Plaintiff.

43. The Defendant advanced its own interests to the detriment of the Plaintiff.

44. The Plaintiff has sustained damages.

45. The Plaintiff's damages were proximately caused by the Defendant's breach of its fiduciary duty.

## COUNT VI - BREACH OF THE SPECIAL DUTY OF CARE
## (AS TO DEFENDANT THE LEGION OF CHRIST INCORPORATED)

1. Paragraphs 1 through 40 of the First Count are hereby incorporated as Paragraphs 1 through 40 of this Sixth Count, as if fully set forth herein.

41. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a special duty of care to protect the Plaintiff from criminal acts of its employees and/or agents.

42. The Defendant knew, or should have known of other students' propensity to engage in sexual abuse of minor students, and failed to protect the Plaintiff other students.

43. It was reasonably foreseeable that other students would sexually abuse the students in its care and custody, including the Plaintiff.

44. The Plaintiff's damages were proximately caused by the Defendant's breach of its special duty of care to the Plaintiff.

## COUNT VII - NEGLIGENCE
## (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. The Plaintiff readopts and realleges all of the allegations set forth in Paragraphs 1 through 26 as though fully set forth herein.

27. Defendant the I.C.A.S. was in a special relationship with the Plaintiff of school-student, such that it owed a duty to protect the Plaintiff from foreseeable harms on school grounds and during school-related activities. In this regard, Defendant was *in loco parentis* with the Defendant's students, including the Plaintiff, which imputed on Defendant a duty to use reasonable care to protect the safety, care, well-being, and health of the minor Plaintiff while he was in their care and custody.

28. Defendant's duties encompassed using reasonable care in the retention, assignment and/or supervision of priests and supervising Legionary who would not pose a threat to the safety, care, health, and well-being of minors.

29. Defendant was in a special relationship with Fr. David of employer and employee/agent such that it had a duty to take steps to make sure that Fr. David was safe before giving him access to students.

30. At all relevant times. Defendant knew or in the exercise of reasonable care should have known that Fr. David was unfit to work with minors; negligent; and a threat to the health, safety, and welfare of the Plaintiff.

31. Despite knowledge of Fr. David's serious threat to the health, safety, and welfare of minors, Defendant continued to provide Fr. David with unfettered access to minors, including the Plaintiff.

32. Defendant had a duty to adequately train teachers and staff in protecting children from sexual misconduct of other students.

33. Defendant breached its duties to protect the Plaintiff by allowing Fr. David to serve as a staff member, giving him access to male students, and by failing to institute any supervision of Fr. David's contact with male students.

34. Defendant breached its duties to the Plaintiff by failing to protect the minor Plaintiff from sexual assault, harassment, and lewd and lascivious acts committed upon the Plaintiff by other students while he was present on school grounds, during school hours, and/or during school-related activities.

35. Defendant breached these duties by failing to use reasonable care to provide a safe environment for the Plaintiff where he would be free from the unwanted sexual advances and dangerous propensities of other students.

36. Defendant breached its duties to protect students from sexual abuse from other students in that it:

    i. failed to adequately monitor and supervise students in their interaction with other minor students, many of whom were especially vulnerable, in order to prevent injury to them;

    j. failed to educate children sufficiently about the differences between a "good touch" and a "bad touch" and the necessity of maintaining safe boundaries amongst the resident students;

    k. knew or should have known in the exercise of reasonable care that students were abusing, sexually exploiting and sexually assaulting other students and allowed such conduct to continue;

    l. failed to enact guidelines to protect children from sexual abuse;

    m. failed to properly train employees at I.C.A.S. about protecting children from sexual abuse;

    n. failed to develop and implement a program or policy to protect children at I.C.A.S. from the harm associated with pedophiles, such as by developing informational handouts and conducting educational events addressing the issue of improper sexual conduct;

    o. failed to provide adequate sexual education to students at I.C.A.S. including teaching and disseminating policies and procedures for student reporting of inappropriate sexual conduct towards students; and/or

    p. failed to implement a policy of discipline in order to deter children from abusing one another.

37. Defendant breached its duties by failing to take corrective action or adequately investigate reports or allegations of sexual misconduct by other students.

38. Given Defendant's constructive and actual knowledge of the activities of the minor students and the dangerous propensities of Fr. David, the sexual assault of the Plaintiff was reasonably foreseeable to Defendant.

39. As a direct and proximate result of Defendant's breach of its duties the Plaintiff was sexually abused by another student while attending I.C.A.S.

40. As a direct and proximate result of the negligence of the Defendant, the Plaintiff suffered and continues to suffer injuries of a serious nature including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and costs associated with medical/psychological care and treatment. These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

### COUNT VIII - RECKLESSNESS
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 40 of the Seventh Count are hereby incorporated as Paragraphs 1 through 40 of this Eighth Count, as if fully set forth herein.

41. Defendant I.C.A.S., acting through its administrators, agents, and employees, was consciously aware of the fact that it created a substantial risk of injury to the Plaintiff.

42. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant failed to take necessary and appropriate steps to reduce or eliminate the risk.

43. Notwithstanding the Defendant's conscious awareness of the risk to the Plaintiff, the Defendant took affirmative steps to exacerbate the risk and to make harm and injury to the Plaintiff more likely, including, but not limited to, permitting Fr. David to engage in favoritism and lack of supervisory actions, and allowing the unsupervised students with known dangerous propensities access to other students.

44. The injuries suffered by the Plaintiff were caused by the reckless or callous indifference or the wanton misconduct of the Defendant.

### COUNT IX - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 40 of the Seventh Count are hereby incorporated as Paragraphs 1 through 40 of this Ninth Count, as if fully set forth herein.

41. The Defendant created an unreasonable risk of causing the Plaintiff's emotional distress.

42. The Plaintiff's distress was foreseeable.

43. The emotional distress was severe enough that it might result in illness or bodily harm.

44. The Defendant's conduct was the cause of the Plaintiff's distress.

### COUNT X - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 40 of the Seventh Count are hereby incorporated as Paragraphs 1 through 40 of this Tenth Count, as if fully set forth herein.

41. The Defendant intended to inflict emotional distress or it knew that emotional distress was the likely result of its conduct.

42. The school's conduct was extreme and outrageous.

43. The school's conduct was the cause of the Plaintiff's distress.

44. The emotional distress sustained by the Plaintiff was severe.

### COUNT XI - BREACH OF FIDUCIARY DUTY
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 40 of the Seventh Count are hereby incorporated as Paragraphs 1 through 40 of this Eleventh Count, as if fully set forth herein.

41. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a fiduciary duty to the Plaintiff.

42. This fiduciary duty gave rise to (a) a duty of loyalty on the part of the Defendant to the Plaintiff; (b) an obligation on the part of the Defendant to act in the best interests of the Plaintiff; and (c) an obligation on the part of the Defendant to act in good faith in any manner relating to the Plaintiff.

43. The Defendant advanced its own interests to the detriment of the Plaintiff.

44. The Plaintiff has sustained damages.

45. The Plaintiff's damages were proximately caused by the Defendant's breach of its fiduciary duty.

### COUNT XII - BREACH OF THE SPECIAL DUTY OF CARE
### (AS TO DEFENDANT IMMACULATE CONCEPTION APOSTOLIC SCHOOL)

1. Paragraphs 1 through 40 of the Seventh Count are hereby incorporated as Paragraphs 1 through 40 of this Twelfth Count, as if fully set forth herein.

41. The relationship between the Defendant and Plaintiff, as school-student, was a special relationship between the parties such that the Defendant owed a special duty of care to protect the Plaintiff from criminal acts of its employees and/or agents.

42. The Defendant knew, or should have known of other students' propensity to engage in sexual abuse of minor students, but failed to protect the Plaintiff from them.

43. It was reasonably foreseeable that other students would sexually abuse the students in its care and custody, including the Plaintiff.

44. The Plaintiff's damages were proximately caused by the Defendant's breach of its special duty of care to the Plaintiff.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment against the defendants The Legion of Christ Incorporated, and Immaculate Conception Apostolic School, and award all damages including compensatory damages and special damages, punitive damages, costs, interest, and any other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all issues contained in this Complaint.

Dated: April 14, 2021.

        Respectfully Submitted,
        The Plaintiff,

        BY: /s/ Patrick Tomasiewicz ct01320
            Patrick Tomasiewicz ct01320
            Fazzano & Tomasiewicz, LLC
            96 Oak Street
            Hartford, CT  06106
            Tel: (860) 231-7766
            Fax: (860) 560-7359
            pt@ftlawct.com