UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| John DOE #5[1] <br> *Plaintiff*, | ) <br> ) <br> ) | 3:21-CV-00517 (KAD) |
| v. | ) <br> ) | |
| LEGION OF CHRIST, INC. & <br> IMMACULATE CONCEPTION <br> APOSTOLIC SCHOOL <br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) | FEBRUARY 25, 2022 |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, ECF No. 20**

Kari A. Dooley, United States District Judge:

In this personal injury suit, Plaintiff John Doe #5 seeks damages for injuries stemming from his time as a student at the Immaculate Conception Apostolic School ("ICAS"). Plaintiff alleges that, while a minor under Defendant ICAS's care, he suffered sexual abuse at the hands of another student and that Defendants ICAS and Legion of Christ, Inc. ("LOC, Inc."), as the owner and operator of ICAS, bear responsibility for that abuse. Plaintiff suffered then and continues to suffer now from psychological and emotional injuries. Against ICAS, Plaintiff brings six claims: Negligence, Recklessness, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Breach of Fiduciary Duty, and Breach of the Special Duty of Care.

Pending before the Court is ICAS's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion is GRANTED.

**Procedural History**

Plaintiff filed his Complaint on April 15, 2021. (ECF No. 1.) This case is one of six cases pending before the Court raising similar allegations brought by different Plaintiffs. In addition to

---

[1] The Court granted Plaintiff's motion to proceed by pseudonym. (ECF No. 18.)

this action, also pending before the Court are the following: *John Doe #1 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00512, *John Doe #2 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00514, *John Doe #3 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00515, *John Doe #4 v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00516, and *Jane Doe v. Legion of Christ, Inc. et al.*, No. 3:21-cv-00518.

ICAS and LOC, Inc. each filed a motion to dismiss.[2] ICAS asserts that the Court does not have personal jurisdiction over it or, alternatively, that the case should be dismissed for the reasons advanced by LOC, Inc. in its motion to dismiss. (ECF No. 20.) LOC, Inc. seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), with respect to the recklessness and breach of fiduciary duty claims under New Hampshire law. (ECF No. 21.)[3]

**Allegations**

Plaintiff is a citizen and resident of Immokalee, Florida. (Compl. ¶ 1.) ICAS a nonprofit corporation incorporated in New Hampshire with its principal place of business also in New Hampshire. (Compl. ¶ 3.)

LOC, Inc. is a Connecticut corporation with its principal place of business in Connecticut. (Compl. ¶ 2.) Further, LOC, Inc.'s headquarters are in in Connecticut, where it administers all of its subordinate programs, including the administration of the schools that it owns and operates. (Compl. ¶ 5.) ICAS was owned and operated by LOC, Inc., and "[m]ajor decision for I.C.A.S. were established from The Legion of Christ's headquarters in Connecticut." (Compl. ¶ 4.) The Complaint also alleges that, "[a]t all material times, The Legion of Christ was responsible for the assignment of priests, supervision of priests, and the implementation of policies and procedures at

---

[2] Similar motions to dismiss were filed in each of the other pending matters.
[3] The Court will address LOC, Inc.'s motion to dismiss in a separate memorandum of decision.

its parishes and Catholic schools, including policies relating to the safety of children and prevention of childhood sexual abuse." (Compl. ¶ 2.)[4]

Plaintiff began his education at ICAS during the summer of 1995, shortly before attaining 12 years of age.[5] (Compl. ¶ 12.) Although students were normally placed with their peers, Plaintiff, who was still pre-pubescent, was placed into a section with older students, who were in the 9th grade. (Compl. ¶¶ 13–14.) In approximately January or February of 1997, Fr. David Steffy ("Steffy") instructed Plaintiff and another student—who held some delegated authority, was post-pubescent and more physically mature than Plaintiff, and was a favorite of Steffy's—to shower alone and unsupervised, and, while Plaintiff waited for his turn, the other student exposed his erect penis to the Plaintiff, washing it slowly while looking at the Plaintiff. (Compl. ¶ 16–18.) Shortly thereafter, Plaintiff was assigned to sleep in the bunk bed below this student. (Compl. ¶ 19.) On the first night of this new sleeping arrangement, the same student approached Plaintiff's bed and exposed his erection through his pajamas to the Plaintiff. (Compl. ¶ 20.) On approximately ten occasions over the next several months, Plaintiff would wake up in the night to find the student kneeling next to his bed with the student's hands fondling the Plaintiff's buttocks or genitals. (Compl. ¶ 22.) Plaintiff confronted the student after another student noticed the activity and questioned it, but the abusing student denied the accusations. The abusing student left the school

---

[4] ICAS contests the allegations in this paragraph through an affidavit submitted by Father Frank Formolo, Treasurer, Secretary, and Member of the Board of Directors for ICAS. Therein, Father Formolo avers, *inter alia*, that all of ICAS's operations were in New Hampshire, that ICAS does not operate or conduct any affairs in Connecticut, and that LOC, Inc. did not own or operate ICAS. Father Formolo also attached copies of ICAS's formation documents to his affidavit. The Court need not and does not resolve any factual disputes raised by this affidavit in deciding this motion.

[5] As "Background," Plaintiff alleges that The Legion of Christ is a religious order associated with the Roman Catholic Church and that The Legion of Christ has experienced a number of sexual abuse scandals over the years, including some at ICAS. However, Plaintiff does not specifically explain the relationship between The Legion of Christ, the religious order, and LOC, Inc. The Complaint simply adopts "Legion of Christ" as a naming convention for collectively referring to Defendants LOC, Inc. and ICAS.

soon after. (Compl. ¶ 24.) Plaintiff was a minor at the time of the abuse which occurred without his consent and against his will. (Compl. ¶ 25.)

ICAS was in a special relationship with the Plaintiff of school-student, essentially *in loco parentis* with the Plaintiff. (Compl. ¶ 27.) ICAS employed Steffy, and ICAS knew that Steffy was unfit to work with minors, dangerous, and a threat to the health, safety, and welfare of the Plaintiff. (Compl. ¶ 29–30.) Despite this knowledge, ICAS provided Steffy with unfettered access to minors, including Plaintiff. (Compl. ¶ 31.) ICAS breached its duties to the Plaintiff by failing to protect him from sexual assault, harassment, and lewd and lascivious acts committed upon him by other students while he was present on school grounds and in other locations. (Compl. ¶ 34–36.) Moreover, notwithstanding ICAS's conscious awareness of the risk of harm to Plaintiff, ICAS took affirmative steps to exacerbate the risk and make harm more likely by permitting Steffy to engage in favoritism and to lack supervisory action, and by allowing students with known dangerous propensities access to other students. (Compl. ¶ 43.)

As a direct and proximate result of ICAS's actions, the Plaintiff suffered and continued to suffer injuries of a serious nature, including mental and emotional distress, anxiety, psychological and psychiatric scarring, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation, and costs associated with medical/psychological treatment. (Compl. ¶ 40.) These injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future. (*Id.*).

**Legal Standard**

District courts have considerable procedural leeway to decide a pretrial motion to dismiss for lack of personal jurisdiction, to include deciding the motion on affidavits alone, permitting

4

discovery in aid of the motion, or conducting an evidentiary hearing on the motion. *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

The plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant. *See Carney v. Beracha*, 996 F. Supp. 2d 56, 60 (D. Conn. 2014) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "[T]he showing that a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Financial Securities, Inc.*, 722 F.3d at 84 (quotations and citations omitted). When the motion is made on the basis the pleadings, the court "may consider affidavits and other evidence submitted by the parties." *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 222 (D. Conn. 2015). "[A] district court may do so without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment," but, if the court chooses not to hold an evidentiary hearing, the court may not resolve factual disputes against the plaintiff. *See Dorchester Financial Securities, Inc.*, 772 F.3d at 86.

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citing Fed. R. Civ. P. 11). In such a preliminary posture, as is the case here, a plaintiff need only make a *prima facie* showing of jurisdiction to defeat the motion. *Id.* The pleadings and affidavits must be read "in the light most favorable to the plaintiff, resolving all doubts in its favor." *See Dorchester Financial Securities, Inc.*, 772 F.3d at 85 (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).

**Discussion**

"In determining personal jurisdiction in a diversity suit, the Court conducts a two-part analysis: First, the Court determines whether, under the laws of the forum state (here Connecticut), there is jurisdiction over defendants. Second, the Court determines whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 160 (D. Conn. 2009) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). The Court begins its analysis with the relevant provisions of the Connecticut long-arm statutes.

Generally, the exercise of jurisdiction over a foreign corporation such as ICAS is governed by the long arm statute located at Conn. Gen. Stat. § 33-1219(f). However, Plaintiff concedes that insofar as he is not himself a resident of Connecticut, he cannot rely upon this statute to secure jurisdiction over ICAS.[6] Instead, Plaintiff asserts that the Court can exercise personal jurisdiction over ICAS pursuant to Conn. Gen. Stat. § 33-1219(e), which provides:

> Every foreign corporation which conducts affairs in this state in violation of section 33-1210 shall be subject to suit in this state upon any cause of action arising out of such affairs.

---

[6] Conn. Gen. Stat. § 33-1219(f) provides:

> Every foreign corporation shall be subject to suit in this state, **by a resident of this state** or by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any solicitation in this state by mail or otherwise if the corporation has repeatedly so solicited, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

(emphasis added.)

Connecticut General Statutes § 33-1210, in turn, provides that "[a] foreign corporation, . . . may not **conduct affairs** in this state until it obtains a certificate of authority from the Secretary of the State." (Emphasis added.) The statute also provides a list of what **does not** constitute conducting affairs within the meaning of the statute:

> (1) Maintaining, defending or settling any proceeding; (2) holding meetings of the board of directors or members or carrying on other activities concerning internal corporate affairs; (3) maintaining bank accounts; (4) selling through independent contractors; (5) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts; (6) creating or acquiring indebtedness, mortgages and security interests in real or personal property; (7) securing or collecting debts or enforcing mortgages and security interests in property securing the debts; (8) owning, without more, real or personal property; (9) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature; (10) conducting affairs in interstate commerce.

Conn. Gen. Stat. § 33-1210(b). This list is not exhaustive. *See* Conn. Gen. Stat. § 33-1210(c). Thus, a court may exercise personal jurisdiction over a foreign corporation that has failed to acquire a certificate of authority from the Secretary of State upon the demonstration of two prerequisites: the foreign corporation conducts affairs in Connecticut, and the cause of action arises out of those affairs. *See The Cousteau Society v. Cousteau*, 498 F. Supp. 3d 287, 302 (D. Conn. 2020) (quoting *Lombard Bros., Inc. v. General Asset Management Co.*, 190 Conn. 245, 251 (1983) (interpreting Conn. Gen. Stat. § 33-411(b), which preceded Conn. Gen. Stat. § 33-929(e)).[7] Whether a foreign

---

[7] Connecticut General Statutes §§ 33-1219(e) and 33-929(e) contain similar text, with the primary difference being that the former refers to "conducting affairs" and the latter refers to "transacting business." Section 33-1219(e) is the long arm statute for nonstock corporations, such as defendant ICAS, while § 33-929(e) is the long arm statute for business corporations. Notwithstanding this different language, Connecticut courts have routinely applied caselaw relevant to § 33-929(e) to cases involving § 33-1219(e). *See*, *e.g.*, *Ashinsky v. Westchester Cycle Club*, No. FSTCV206046769S, 2020 WL 8135521, at *3 n.4 (Conn. Sup. Ct. Dec. 1, 2020); *see also Publications Group, Inc. v. Am. Soc. of Heating, Refrigerating, and Air-Conditioning Engineers, Inc.*, 566 F. Supp. 316, 319 n.1 (D. Conn. 1983) (indicting that caselaw relevant to the predecessor of § 33-929(e) could be applied to the predecessor of § 33-1219(e)).

company conducts affairs in the state is an inquiry that must be determined on the complete factual picture presented in each case. *See Ryan v. Cerullo*, 282 Conn. 109, 128 (2007). However, the terms transacting business and conducting affairs are not broadly or liberally interpreted in Connecticut. *See LEGO A/S v. OYO Toys, Inc.*, No. 3:19-cv-01610 (VAB), 2020 WL 4043084, at *6 (D. Conn. July 17, 2020) (quoting *Milne v. Catuogno Court Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 198 (D. Conn. 2002)).

The parties agree that ICAS, a New Hampshire entity running a school in New Hampshire, never registered with Connecticut's Secretary of State. The dispute is whether ICAS conducted affairs in Connecticut within the meaning of Conn. Gen. Stat. § 33-1210 such that registration with the Secretary of State was required, thereby triggering, in theory, the application of § 33-1219(e).

ICAS's principal place of business is in New Hampshire, where it operated, at the times relevant to the Complaint, a private, Roman Catholic boarding school. ICAS is not alleged to have engaged in any of the purposes for which it had been formed in Connecticut. *See Ashinsky*, 2020 WL 8135521, at *6 (finding that Connecticut's long-arm statute reached a foreign non-profit where the non-profit, which was formed to bring cyclists together for cycling activities, consistently organized and conducted bicycle rides in Connecticut). ICAS's students attended class, boarded, and otherwise resided in New Hampshire, where the school was located. New Hampshire is also where the alleged sexual abuse took place. Indeed, absent from the Complaint are any specific allegations that ICAS conducted any non-administerial activities in Connecticut at all.

Rather, Plaintiff argues that because he alleges that ICAS was subject to the administrative control of, and was supervised by, LOC, Inc. from Connecticut, he has made a *prima facie* showing that ICAS "conducted affairs" in Connecticut within the meaning of the statutes. Plaintiff supports

this argument with additional allegations that LOC, Inc. owns ICAS and that major decisions were made for ICAS from LOC, Inc.'s headquarters in Connecticut.

The Court disagrees.

"It is a fundamental principle of corporate law that 'the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers." *Tyler E. Lyman, Inc. v. 19 Thames Street Partnership*, 109 Conn. App. 670, 677 (2008) (quoting *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 232 (1991)) (alterations omitted). Consequently, a parent entity's decision is not generally ascribed to the subsidiary, even if the decision is made for the subsidiary and in some way affects its business. *See id.* at 675–76 (affirming the trial court's finding that, despite occupying the space conveyed, a subsidiary was not a tenant because its parent corporation had entered into the operative lease); *see also*, *e.g.*, *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015) (noting the importance of the "well-settled principles of corporate law, which treat parent corporations and their subsidiaries as legally distinct entities"). It would be an absurd result indeed if every subsidiary of a Connecticut based corporation could be brought within the Court's jurisdiction for failing to register with the Secretary of the State, if in fact, the subsidiary's ***only*** activity within the state derived from its relationship with the parent corporation. And the statue itself appears to contemplate and dispel any such notion. *See* Conn. Gen. Stat. § 33-1210(b)(2) (excluding "holding meetings of the board of directors or members or **carrying on other activities concerning internal corporate affairs**" from the definition of "conducting affairs") (emphasis added).  Accordingly, LOC Inc.'s conduct in the state of Connecticut cannot be imputed to ICAS simply by virtue of LOC Inc.'s alleged ownership of ICAS.

And upon review of the allegations, it is manifest that Plaintiff's allegations only implicate LOC, Inc.'s conduct in Connecticut. Plaintiff alleges: "Connecticut is the state in which Defendant Legion of Christ Incorporated administers all of its subordinate programs, *including the administration of the schools it owns and operates*." (Compl. ¶ 5 (emphasis added).) Similarly, the Complaint alleges that "[m]ajor decisions for I.C.A.S. *were established from* The Legion Christ's headquarters in Connecticut" and that "the administration and/or supervision of I.C.A.S. by The Legion of Christ *was under the direction and control of Defendant The Legion of Christ Incorporated's headquarters* in Connecticut." (Compl. ¶¶ 4–5 (emphasis added).)[8] These allegations do no more than make ICAS, at all relevant times located in New Hampshire, the passive recipient of information or directives issued in Connecticut. Indeed, Plaintiff concedes in his memorandum in opposition that ICAS "was entirely managed and operated *by the Legion* in Cheshire, CT." (Pl.'s Mem. 10, ECF No. 35 (emphasis added).) Aside from the alleged intra-corporate structure of the defendants and the intra-corporate communications between ICAS and LOC, Inc., Plaintiff has offered no basis, and cites to no caselaw, upon which the Court can conclude that ICAS "conducted affairs" in Connecticut within the meaning of Conn. Gen. Stat. § 33-1210. ICAS was not therefore required to obtain a certificate of authority from the Secretary of State, and the failure to do so cannot be the predicate upon which long-arm jurisdiction is obtained.

Insofar as the Court has concluded that ICAS was not "conducting affairs" within the state of Connecticut in violation of Conn. Gen. Stat. § 33-1210 or as contemplated under Conn. Gen. Stat. § 33-1219(e), it is axiomatic that the Plaintiff's claims are not ones arising out of said affairs,

---

[8] Other allegations more directly accuse ICAS of breaching duties of care by, for example, putting Plaintiff at risk of sexual abuse by exposing him to Steffy, but absent from those allegations is any indication that those breaches occurred in Connecticut. In sum, the Complaint simply fails to allege that ICAS, as opposed to The Legion of Christ or LOC, Inc., did anything to harm the Plaintiff in Connecticut.

the second prerequisite to jurisdiction under Conn. Gen. Stat. § 33-1219(e). *See The Cousteau Society*, 498 F. Supp. 3d at 304.

**Conclusion**

Because the Court concludes that Conn. Gen. Stat. § 33-1219(e), the relevant long arm statute, does not reach ICAS, the Court lacks personal jurisdiction over ICAS and the Court therefore need not take up a Due Process analysis. *See Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) ("Except where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process—as it commonly does in states other than [Connecticut]—analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute."). ICAS's motion to dismiss is GRANTED and the Clerk of the Court is directed to terminate ICAS as a defendant in this action.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of February 2022.

                                                    */s/ Kari A. Dooley*
                                                   KARI A. DOOLEY
                                                   UNITED STATES DISTRICT JUDGE